UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-mc-22 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JOEL BROWN and TAURUS, LIBRA, & CANCER, INC., | ) | |
| | ) | |
| RESPONDENTS. | ) | |

Before the Court is a petition to enforce subpoenas issued by the United States Department of Housing and Urban Development ("HUD"). (Doc. No. 1 ["Pet."].) Respondents have answered and opposed the petition. (Doc. No. 3 ["Opp'n"].) HUD[1] filed a reply. (Doc. No. 4 ["Reply"].) For the reasons set forth herein, the petition is granted.

## I. BACKGROUND

HUD is the federal agency charged with the administration and enforcement of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (Fair Housing Act ["FHA"]). HUD is responsible for investigating charges of unlawful housing discrimination and, in connection with such investigations, has the authority to issue subpoenas. *See* 42 U.S.C. §§ 3610, 3611. Under 42 U.S.C. § 3614(c), the Attorney General of the United States may seek judicial enforcement of administrative subpoenas issued by HUD. (Pet. ¶¶ 5, 6.)

Respondent Joel Brown ("Brown") is a resident of the Northern District of Ohio and the owner of respondent Taurus, Libra & Cancer, Inc. ("TLC"), an Ohio corporation with its

---

[1] The petitioner is actually the United States of America. For convenience, the Court will refer to the petitioner as "HUD."

principal place of business in Akron, Ohio. TLC owns rental housing units known as Parkside Residential Hotel ("the subject property"), located in Akron and managed by Brown. (*Id.* ¶ 2.)

In March 2010, John Adkins ("Complainant Adkins") contacted Fair Housing Contact Service ("FHCS"), an Akron-area fair housing organization, and alleged that Brown had refused to rent him a room at the subject property because he had a service dog. (*Id.* ¶ 8.) FHCS conducted testing and, as a result of this testing, concluded that Brown was engaging in both gender and disability discrimination. (*Id.* ¶ 9.) In November 2010, FHCS and Complainant Adkins both filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC"), which began an investigation. (*Id.* ¶ 10.) In August 2012, Complainant Adkins dismissed his OCRC complaint, due to his relocation to California. (*Id.* ¶ 11.)

Following its investigation, OCRC found probable cause to believe that Brown and TLC had engaged in discriminatory conduct. On October 29, 2012, OCRC filed suit on behalf of FHCS against Brown and TLC in the Summit County Court of Common Pleas ("the Ohio litigation"). (*Id.* ¶ 12.)[2] Complainant Adkins was not a party to the Ohio litigation until, on February 24, 2014, TLC filed a counterclaim against him,[3] OCRC, FHCS, and several of FHCS's officers and employees, asserting numerous claims, including corrupt activity, extortion, coercion, fraud, civil conspiracy, frivolous conduct, abuse of process, and violations of 42 U.S.C. §§ 1983 and 1985. (*Id.* ¶¶ 13, 16.)[4]

---

[2] A review of the docket of the case in the state court, of which this Court may take judicial notice, *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n. 5 (6th Cir. 2005) (Federal courts may take judicial notice of related "'proceedings in other courts of record.'") (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980), reveals that OCRC dismissed its claims against TLC with prejudice on September 16, 2016, five months after the instant petition was filed. There is no indication on the record of *this* Court that the dismissal has any significance with respect to the instant petition.

[3] As a non-party to the Ohio litigation, Complainant Adkins was actually not properly included as a counterclaim defendant. Regardless, he is indisputably now a party to that litigation.

[4] A copy of the counterclaim is attached to the reply brief. (*See* Doc. No. 4-1.)

2

On September 10, 2014, Complainant Adkins filed a complaint with HUD asserting that TLC and its legal counsel, Fanger and Associates ("Fanger"), had filed the counterclaim against him in the Ohio litigation "in order to intimidate, interfere, or coerce him, and to prevent him from receiving the full benefit of the protections of federal fair housing law." (*Id.* ¶ 18.) His HUD complaint alleged that TLC and Fanger had "unlawfully obtain[ed] his medical records using allegedly illegal means and threaten[ed] to make them publicly available." (*Id.*)

FHCS and its officers and employees filed in the state court a motion to dismiss all the counterclaims. On June 5, 2015, the state court granted the motion, concluding: "TLC offers no operative facts, other than those couched in legal conclusions, speculation, and opinions throughout its counterclaims." (Pet. ¶ 19; Ex. 3 at 29.) The state court also noted that, to the extent the counterclaims were premised on criminal statutes not providing for a private right of action, they failed to state a claim; that there were no allegations that any of the counter-defendants were state actors for purposes of the claims under §§ 1983 and 1985; and that other claims failed to plead the necessary elements, or pleaded only opinion and conjecture. (*Id*. Ex. 3 at 29-33.)

In December 2015, in the course of its investigation of the September 2014 administrative complaint, HUD served Brown and TLC with subpoenas, requiring the production of documents by January 22, 2016, and requiring Brown to appear at a deposition in Cleveland, Ohio on February 12, 2016. (Pet. Ex. 1.)[5] Neither Brown nor TLC have responded to the subpoenas.

---

[5] Brown and TLC filed a motion to quash, which was dismissed for lack of jurisdiction. *See* Case No. 5:16-mc-002 (Adams, J.); Pet. Exs. 6, 7.

## II. DISCUSSION

When an aggrieved person files a complaint with HUD alleging retaliation under 42 U.S.C. § 3617 for having exercised his or her fair housing rights, HUD "shall make an investigation of the alleged discriminatory housing practice[.]" 42 U.S.C. §§ 3610(a)(1)(A)(i); (a)(1)(B)(iv). HUD has the authority to "issue subpoenas and order discovery in aid of investigations[,]" and such subpoenas and discovery are "subject to the same limitations as would apply if the subpoenas or discovery were ordered or served in aid of a civil action in the United States district court for the district in which the investigation is taking place." 42 U.S.C. § 3611(a).

Here, Complainant Adkins filed a HUD complaint alleging that, by including him in the Ohio litigation, TLC and Brown had "retaliated against [him] for having filed a fair housing complaint with Ohio Civil Rights Commission (OCRC) against these Named Respondents." (Doc. No. 1-2 at 26.) HUD began an investigation into that complaint and, in aid of the investigation, issued two subpoenas within its statutory authority, for which it now seeks judicial enforcement under 42 U.S.C. § 3614(c).

"[A] district court plays only a limited role in the enforcement of an administrative subpoena." *Doe v. United States*, 253 F.3d 256, 262 (6th Cir. 2001) (citation omitted). In this context, "a court's inquiry … is limited to two questions: '(1) whether the investigation is for a proper statutory purpose, and (2) whether the documents the agency seeks are relevant to the investigation.'" *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (quoting *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th Cir. 1989) (additional citation omitted)).

Respondents Brown and TLC do not specifically invoke *Markwood*, *supra*, to challenge either HUD's authority to issue the subpoenas or the relevance to the investigation of the documents sought. Rather, they oppose enforcement of the subpoenas for other reasons. First, they argue that enforcement would violate their First Amendment right under the United States Constitution to seek legal redress from the government through the Ohio litigation. Second, they argue that the documents sought are protected by the attorney-client privilege. Third, they argue that the subpoenas violate the requirements of Fed. R. Civ. P. 45 in several respects: (1) by requiring production of documents beyond the 100-mile restriction; (2) by not allowing a reasonable amount of time to comply with the subpoenas; and (3) by imposing an undue burden on respondent Brown.

*A.     First Amendment Challenge*

Brown and TLC raise a First Amendment challenge to responding to the administrative subpoenas issued by HUD. (Opp'n at 96-97.) They argue that HUD's "attempt to force [a response] to invasive subpoenas is … a violation of [their] first amendment rights to petition the government for redress of grievances." (*Id.* at 97.) They assert that their Ohio litigation "loses its first amendment protection for lawsuits" only if the lawsuit was filed "(1) for an illegal objective; (2) without a reasonable basis in law or fact; and (3) with an improper motive." (*Id.*, citing *United States v. Wagner*, 940 F. Supp. 972, 978 (N.D. Tex. 1996).) They claim to have filed their counterclaim in the Ohio litigation only upon discovery of evidence that Adkins "fabricated his claims and was assisted by FHCS and OCRC in bringing his claims against TLC." (*Id.*) Their argument with respect to alleged First Amendment protection fails to address the three elements above. Rather, they rely upon the fact that their claims against Complainant

Adkins in state court are "currently being litigated." (*Id.*, emphasis removed.) But pendency is not an element of the test for whether the First Amendment offers any protection.[6]

Brown and TLC also argue that "[u]nder the Noerr-Pennington Doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their conduct." (Opp'n at 98.) It appears they are advocating for the questionable position that, due to their having "petition[ed] the government" by means of their counterclaim against Claimant Adkins, their behavior vis-a-vis Adkins is completely immunized and protected by the First Amendment from the subpoena power of HUD. They quote the Tenth Circuit (incorrectly representing in their brief that the quotation is a "state[ment] by the United States Supreme Court") for the proposition that courts are to guard against "the injudicious exercise of the power to issue an investigatory subpoena." (*Id.* at 99-100, quoting *Oklahoma Press Publ'g Co. v. Walling*, 147 F.2d 658, [661] (10th Cir. 1945) (citing, but not quoting, various Supreme Court cases).)[7] They then conclude that the administrative subpoenas here "are precisely the sort

---

[6] More fundamentally, the Court questions whether there actually is any First Amendment argument to be made here. First, it has not been clearly decided that a lawsuit is a constitutionally protected "petition." *See Burough of Duryea, PA v. Guarnieri*, 564 U.S. 379, 131 S. Ct. 2488, 2503, 180 L. Ed. 2d 408 (2011) (Scalia, J., concurring in part, dissenting in part) ("The Court has never actually *held* that a lawsuit is a constitutionally protected "Petition," nor does today's opinion hold that.") (emphasis in original). Second, the Petition Clause contained in the First Amendment provides a right to petition the *national* government. *See United States v. Cruikshank*, 92 U.S. 542, 552 (1875) (the first amendment was intended "to operate upon the National government alone"). The "petition" in this instance has been directed only to the state government through its state court.

[7] *Oklahoma Press Publ'g*, however, offers no guidance. It involved enforcement of an investigatory subpoena issued by the administrator of the Wage and Hour Division of the Fair Labor Standards Act. The target of the subpoena, Oklahoma Press Publishing Company, argued that it was not subject to the FLSA because it was not engaged in commerce or in the production of goods for commerce within the meaning of the FLSA or, in the alternative, was a service establishment entitled to an exemption under the Act. It argued that it was entitled to an adjudication of actual coverage as a prerequisite to enforcement of the subpoena. The Tenth Circuit held to the contrary, noting that "the orderly and efficient enforcement of the Act within the framework of the constitutional rights of the parties involved, require only that the District Court have the assurance that it is not giving judicial sanction and force to unwarranted and arbitrary action, but that reasonable grounds exist for making the investigation." *Oklahoma Press Publ'g*, 147 F.2d at 662 (quotes and citation omitted). The same is true here, especially given that respondents do not, and cannot, argue that they are not subject to the FHA.

that the Supreme Court [sic] warned of regarding the exercise of power to issue an investigatory subpoena." (*Id.* at 100.)

Although the Noerr-Pennington doctrine arose in the anti-trust context, it has been extended to other statutory contexts. Under the doctrine, "liability may not be assessed … except in very limited circumstances, for actions taken when petitioning authorities to take official action, regardless of the motives of the petitioners, even where the petitioning activity has the intent or effect of depriving another of property interest." *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992) (citation omitted). "The Supreme Court has carved out a narrow 'sham' exception to this doctrine which covers cases where the defendant intended to use the petitioning process merely to harass the plaintiff." *Id.* (citing cases).

Ordinarily, the sham exception to the Noerr-Pennington doctrine is a narrow one, often involving difficult questions of fact. *See Westmac, Inc. v. Smith*, 797 F.2d 313, 318 (6th Cir. 1986) (citations omitted). The burden is on the one opposing application of the Noerr-Pennington doctrine "to prove that the [proponent] comes within the sham exception[.]" *Id.*

HUD argues that the state court's dismissal of all the counterclaims against Complainant Adkins' co-counter-defendants is a significant indicator that respondents' claims against Adkins are also objectively baseless, falling within the sham exception. The state court concluded that "[t]he majority of [respondents'] counterclaims are legal conclusions, devoid of any factual context, full of criticisms and opinions of the housing testing process and cannot be considered admitted or true. [Respondents] also impl[y] a devious and conspiratorial aspect toward all involved in housing discrimination claims, including the legislation." (Doc. No. 1-3 at 28.)

The Court agrees with HUD's argument that the state court ruling is a clear indication that the outcome as to Complainant Adkins would have been the very same had he joined in the

7

motion before that court. This Court sees no reason to conclude otherwise, and respondents have failed to make any argument in this regard, relying solely on the fact that the counterclaims against Adkins remain pending in state court, a fact quite likely due to his lack of legal representation and his out-of-state residency.

Respondents can find no refuge in the First Amendment as a ground for suppressing the administrative subpoenas.

### B. *Attorney-Client Privilege*

Respondents argue that "[i]n each and every request, the breadth of the request necessarily requires [them] to expose communications made with counsel for the purpose of obtaining legal advice." (Opp'n at 103.) Further, they assert generally that "the request for documents are [sic] so broad that they necessarily encompass all communications made between Defendants and counsel, including all those made for the purpose of soliciting legal advice." (*Id.* at 104.)

The attorney-client privilege is "narrowly construed," and "protects only those communications necessary to obtain legal advice." *In re Columbia/HCA Healthcare Corp. Billing Prac. Lit.*, 293 F.3d 289, 294 (6th Cir. 2002). Here, respondents supply absolutely no examples for the Court's consideration, and the burden is theirs to show that particular requests seek privileged documents. *Id.* If privileged documents are truly being sought, the appropriate response is by way of a privilege log under Fed. R. Civ. P. 45(e)(2), not a blanket refusal to comply.

### C. *Rule 45 Challenges*

The remaining challenges of Brown and TLC to the subpoenas go to the usual limitations on subpoenas set by Fed. R. Civ. P. 45. Respondents bear the burden of establishing that the rule

has been violated. *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *3 (N.D. Ohio Feb. 13, 2008).

First, respondents argue that they reside in Akron, Ohio and have been required to produce documents to an address in Chicago, Illinois – allegedly a violation of the 100-mile limit in Rule 45(c)(2)(A). But courts generally find that the rule does not apply where documents can be mailed and do not require personal appearance. *Battle v. Chicago Cycle, Inc.*, No. 1:11MC61, 2012 WL 5500507, at * 4 n.2 (N.D. Ohio Nov. 13, 2012); *see also Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) ("the 100 mile limit applies to travel by a subpoenaed person, but a person commanded to produce documents need not appear in person at the place of production or inspection"); Fed. R. Civ. P. 45(d)(2)(A) ("a person commanded to produce documents … need not appear in person at the place of production … unless also commanded to appear for a deposition, hearing, or trial.").

Second, respondents argue that the time for compliance is unreasonable, given that the request requires that they "search through the entirety of the case file" from the Ohio litigation. (Opp'n at 102-03.) The subpoena required production of the documents within 25 days.[8] Rule 45 does not specifically define "reasonable time" for compliance, but HUD argues that courts often find 14 days sufficient. (Reply at 140-41, citing *Brown v. Hendler*, No. 09 Civ. 4486(RLE), 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002).) Therefore, in HUD's view, 25 days (or nearly double the usual time frame) is presumptively sufficient. The Court agrees with HUD, given that respondents have made no effort to meet their burden of demonstrating, other than in the most general terms, how

---

[8] Respondents make no argument challenging the subpoena for Brown's deposition, which set an appearance 46 days after its service.

25 days would be an insufficient amount of time to comply with the document production subpoena.

Third, respondents argue that both subpoenas subject Brown to an undue burden. They do not argue undue burden as to TLC. (Opp'n at 105-06.) The essence of this argument is that the subpoena was issued to harass respondents, that the documents requested can be obtained by HUD from the public website of the state court, and that the document request is overbroad and seeks irrelevant documents.[9] Respondents also repeat their claim of First Amendment and privilege protection. In evaluating whether an administrative subpoena is unduly burdensome, the Court must weigh the relevance of the material sought against the burden of producing it. *Doe v. United States*, 253 F.3d 256, 267 (6th Cir. 2001). Further, in the administrative context, "relevance" is interpreted broadly, to permit a thorough investigation by the government. *Id.* Here, aside from assertion of irrelevance, respondents point to nothing in particular that would qualify as an "irrelevant" inquiry and, absent that, no burden, much less an undue burden, is established, especially since this subpoena was issued in the administrative context.

### III. CONCLUSION

For the reasons set forth herein, the petition to enforce the HUD subpoena is granted.

**IT IS SO ORDERED**.

Dated: November 29, 2016

										  **HONORABLE SARA LIOI**
										  **UNITED STATES DISTRICT JUDGE**

---

[9] Although relevance is one of the two questions for the Court's inquiry under *Markwood*, respondents do not actually explain in what specific respect the subpoenas seek irrelevant information. They merely *assert* that the subpoenas "expand beyond what is 'relevant' and explicitly into what 'may be relevant.'" (Opp'n at 105.) This one-sentence assertion does not meet respondent's burden on this question.